IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KIM HULETT, as personal     Civ. No. 07-6151-AA
representative for the estate
of LARRY HULETT,            OPINION AND ORDER

    Plaintiff,

  v.

CAPITOL AUTO GROUP, INC., dba
CAPITOL CHEVROLET CADILLAC SUBARU,
an Oregon Corporation,

    Defendant.
_____

Kevin T. Lafky
Larry L. Linder
Haley Percell
Laftky & Lafky
429 Court Street NE
Salem, OR 97301
    Attorneys for plaintiff

Eugene H. Buckle
Shari L. Lane
Cosgrave Vergeer Kestler
805 SW Broadway, 8th Floor
Portland, OR 97205
    Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff filed suit on behalf of Larry Hulett's estate, alleging that Hulett's termination of employment by defendant violated: (1) the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, *et seq.*; (2) the Americans with Disability Act (ADA), 42 U.S.C. § 12112, *et seq.*; (3) the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2611, *et seq.*; (4) Oregon statutes prohibiting age and disability discrimination, Or. Rev. Stat. § 659A.030, *et seq.*; and (5) the Oregon Family Leave Act (OFLA), Or. Rev. Stat. §§ 659A.150-186. Plaintiff also alleges common law claims of wrongful discharge and intentional infliction of emotional distress. Before the court are defendant's Motion to Compel Arbitration and Stay or Dismiss the Complaint (doc. 9) pending arbitration.

For the following reasons, defendant's Motion to Compel Arbitration and Stay the Complaint is granted, but in accordance with the following order severing the discovery provision of the Arbitration Agreement.

I. Factual Background

For purposes of this motion, the court accepts the allegations of plaintiff's complaint and supporting affidavit as true.

Plaintiff is the personal representative of the estate of her deceased husband, Larry Hulett. On or about July 2005, Hulett was rehired by the defendant after having taken disability retirement in 2004. As a condition of his employment, Hulett signed an Arbitration Agreement on June 29, 2005. The Arbitration Agreement provides that all legal disputes arising between the parties will

be resolved by arbitration and delineates the process for pursuing claims.

On January 9, 2006, Hulett went to work but was not feeling well. Hulett told Brian Iverson, a claims and service writer, that he was not feeling well, needed to go home, and would try to see a doctor. Hulett had previously contacted Iverson if he would not be at work. If Iverson was not available, he would speak to Dawn Gohlke, an estimator in the body shop, or Sheila Barry from accounts receivable. Plaintiff alleges that other employees followed the same procedure.

On January 10, 2006, Hulett called and spoke with Barry. He informed Barry that he would not be at work that day because he was going to see a doctor. Hulett called his doctor and went to Veteran's Hospital in Portland on his doctor's instruction. After his admission to the hospital, the doctors told Hulett they believed he had suffered several mild heart attacks.

On January 11, 2006, Hulett remained in the hospital. Plaintiff called defendant and spoke with Dezie Simeral, the receptionist. Plaintiff told Simeral that Hulett was in the hospital after having possibly suffered a heart attack and would not return to work that day. Afterwards, plaintiff called Gohlke and informed her that Hulett would not be coming to work on January 12, 2006, because he had suffered a heart attack and was hospitalized. On January 12, 2006, Hulett was released from the hospital, and he went home to recover.

On January 13, 2006, Hulett called Iverson and told him that

3 - OPINION AND ORDER

he would not be at work that day, but that he would try to retrun to work on January 16, 2006. Iverson told Hulett that he would probably need a release from his doctor before returning to work.

Also on January 13, 2006, Robin Moore, from defendant's human resources department, called plaintiff and left a message indicating that she needed to know what kind of clearances or releases Hulett required in order to return to work. Moore also left a voicemail message later in the day, instructing plaintiff to call her right away. Plaintiff called Moore back, but she was out of the office for the day.

On January 16, 2006, Hulett called Moore in the morning and left a voicemail message. When Moore returned Hulett's call, she informed him that he was being terminated and read the termination letter over the phone. Later in the day, Hulett received the termination letter by mail. The letter, dated January 13, 2006, stated that Hulett was terminated because he failed to notify his supervisor, Aaron Trueblood, before leaving work on January 9, 2006. The letter also indicated that Hulett's termination was effective January 9, 2006, but that Hulett would be paid through January 13, 2006. Plaintiff alleges that other employees left work but were not terminated. Plaintiff also alleges that Trueblood treated Hulett differently than other similarly situated employees.

After he was terminated, Hulett requested and received a copy of his employment file. Hulett discovered that there were disciplinary "write-ups" in his file. Plaintiff alleges that Hulett was not informed of any "write-ups," and that he did not

sign any of them. Hulett passed away on March 1, 2007.

The Oregon Bureau of Labor and Industries issued plaintiff a right-to-sue letter on March 29, 2007. On April 4, 2007, plaintiff also received a right-to-sue letter from the Equal Employment Opportunity Commission. On June 26, 2007, plaintiff filed this action. Defendant filed a motion to compel arbitration and stay or dismiss plaintiff's complaint on August 13, 2007.

## II. Discussion

Defendant moves to compel arbitration and either stay or dismiss this case. Defendant maintains that Hulett agreed to arbitrate all claims against it and that the Arbitration Agreement must be enforced. In response, plaintiff argues that the Arbitration Agreement is invalid and unenforceable because it is unconscionable.

Under the Federal Arbitration Act, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. In determining the validity of an arbitration agreement, federal courts "apply ordinary state-law principles that govern the formation of contracts." Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (internal quotation marks and citation omitted); see also Motsinger v. Lithia Rose-FT, Inc., 211 Or. App. 610, 613-14, 156 P.3d 156 (2007). Accordingly, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening federal law." Al-Safin v. Circuit

City Stores, Inc., 394 F.3d 1254, 1257 (9th Cir. 2005) (internal quotations and citation omitted).

Under Oregon law, a contractual provision may be rendered unconscionable when there is a "substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power. . . ." Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 567, 152 P.3d 940 (2007) (internal quotations omitted). Unconscionability is determined by looking at the procedural and substantive components of an agreement. Motsinger, 211 Or. App. at 614, 156 P.3d 156. In deciding whether unconscionability exists as a matter of law, the court looks to the facts that were in existence at the time the contract was made. Best v. U.S. Nat'l Bank, 303 Or. 557, 560, 739 P.2d 554 (1987).

A. Procedural Unconscionability

Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because it is oppressive. Plaintiff maintains that Hulett was required to sign an contract of adhesion, on a take it or leave it basis, as a condition of his employment. Procedural unconscionability looks to two factors at the time of contract formation: oppression and surprise. Vasquez-Lopez, 210 Or. App. at 567, 152 P.3d 940. Oppression refers to an inequality of bargaining power where there is an absence of meaningful negotiation. Id. Surprise refers to "the extent to which the supposedly agreed-upon terms of the bargain are hidden" by the party seeking to enforce the agreement. Id.

However, "[m]ere inequality in bargaining power. . .is not a

sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991). Likewise, under Oregon law, contracts of adhesion - "take it or leave it" agreements between parties of unequal bargaining power - are not presumptively void. Rather, the party seeking to enjoin enforcement of a contract must also establish that it is unfair and unreasonable. Reeves v. Chem. Indus. Co., 262 Or. 95, 100-01, 495 P.2d 729 (1972); Graziani v. Novellus Sys., Inc., 2003 WL 23977829, at *6 (D. Or. Sept. 16, 2003); Jacob v. Blue Cross & Blue Shield of Oregon, 92 Or. App. 259, 263, 758 P.2d 382 (1988) (describing adhesion contracts); but see LeLouis v. W. Directory Co., 230 F. Supp. 2d 1214, 1220-21 (D. Or. 2001) (employer cannot force employees to surrender right to have claims heard in court of law under threat of termination). In short, a contract of adhesion is not evidence of per se unconscionability, but also requires unreasonably favorable substantive terms to find the agreement unenforceable. Motsinger, 211 Or. App. at 617, 156 P.3d 156.

Here, plaintiff relies solely on the oppression factor, arguing that Hulett was presented with an adhesion contract by the drafting party. As plaintiff acknowledges, this is not sufficient to establish procedural unconscionability without further evidence of substantive unconscionability. Thus, plaintiff must also establish that the substantive terms of the Arbitration Agreement are unfair and unreasonable.

B.  Substantive Unconscionability

Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it contains: (1) nonmutual terms and unreasonable limitations on discovery; (2) indefinite time limitations for the filing of arbitration disputes; and (3) unreasonable costs.

Under Oregon law, substantive unconscionability exists where a contracts terms render it unreasonably unfair and one-sided. Motsinger, 211 Or. App. at 617, 156 P.3d 156 ("Whether the arbitration clause is *substantively* unconscionable is an inquiry that focuses on the one-sided nature of the substantive terms.") Further, "[t]he substantive fairness of the challenged terms is always an essential issue." Vasquez-Lopez, 210 Or. App. at 567, 152 P.3d 940 (internal quotations omitted) (noting that only substantive unconscionability is absolutely necessary).

1.  Nonmutual Contract Terms & Discovery Limitations

Plaintiff argues that the discovery terms of the Arbitration Agreement are nonmutual between the employee and employer because the employee is the party more likely to bring a dispute to arbitration.  However, the Arbitration Agreement does not contain "nonmutual" discovery clauses on its face.  Rather, both the employee and employer are subject to the same discovery restrictions.  See Declaration of Haley Percell (Percell Decl.), Ex. 1, p. 4. ("Each party should have the opportunity to obtain sufficient "discovery" (information from the opposing party or other persons) to adequately present the claims and/or defenses in

the arbitration."). As such, the appropriateness of the discovery clause is dependent on whether the discovery terms have an unreasonable or unfair one-sided effect on plaintiff.

Plaintiff argues that the discovery limitations are impermissibly restrictive in favor of defendant and prevent employees from adequately presenting claims, particularly in light of the fact that an employee must sign the document, on a take it or leave it basis, as a condition of employment. The Arbitration Agreement provides for discovery as follows:

> [Y]ou and Capitol shall each have the right to request and obtain the following discovery, **without** seeking permission from the Arbitrator:
>
> - up to three (3) depositions;
> - relevant documents from the other party;
> - relevant documents from third parties pursuant to subpoena.
>
> Additional discovery may be authorized by the Arbitrator, <u>except that other forms of written discovery (i.e. interrogatories and requests for admission) must be mutually agreed to by you and Capitol</u>. The Arbitrator shall refuse additional discovery if he or she determines that the requested information is privileged, irrelevant, duplicative, burdensome, or equally available to the requesting party.

Percell Decl., Ex. 1, p. 4 (underlined emphasis added). Thus, while unlimited document discovery is allowed, requests for admission and interrogatories are prohibited by the terms of the agreement, unless both parties agree otherwise. Further, the number of depositions is limited to three, unless further discovery is approved by the arbitrator. Given that the defendant, as the

9 - OPINION AND ORDER

employer, is likely to possess more information regarding an employee's termination, these discovery limitations favor defendant.

As the Supreme Court noted in Gilmer, valid arbitration agreements may limit discovery more than what is allowed in federal court. *See* 500 U.S. at 31. In interpreting the Gilmer decision, other courts have held that arbitration agreements are valid where they provide for "more than minimal discovery." Cole v. Burns Int'l. Sec. Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997) (holding that a discovery provision allowing the arbitrator to order depositions, interrogatories, document production, and otherwise, meets the standard); Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 103 (D.D.C. 2004) ("[O]ne requirement for an enforceable arbitration agreement is more than minimal discovery be permitted.")

Here, I find the restriction requests for admissions and interrogatories is unreasonable and unfair to plaintiff under Oregon's substantive unconscionability standard. Contrary to defendant's assertion that this provision is flexible because the parties may mutually agree to these forms of discovery, such agreement is left to the discretion of the defendant, the employer. As such, an important avenue of discovery is potentially unavailable to plaintiff and is not subject to review by a disinterested third party. Further, the ability to take depositions is curtailed, as both parties are limited to three. Even though an arbitrator may allow additional depositions,

plaintiff is initially limited in identifying or accessing people who work for the employer and may have took part in the employment decision. Plaintiff's ability to conduct discovery is not so restricted under either Oregon or federal rules of civil procedure. See Or. R. Civ. P. 36, 39, 45; Fed. R. Civ. P. 30(a)(2)(A), 33(a), 36 (initially limiting each party to 10 depositions, 25 interrogatories, and unlimited requests for admission). Taken together, the provisions serve to unreasonably withhold information from plaintiff that would otherwise be available through discovery, thus hindering her ability to present her claims in an arbitration forum.

Other jurisdictions have considered the adequacy of discovery procedures and voided provisions that limit a party's fair opportunity to present claims. See, e.g., Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 547 (E.D. Pa. 2006) (holding arbitration agreement substantively unconscionable because plaintiff could not depose other witnesses or defendant's employees); Hoffman v. Cargill, Inc., 968 F. Supp. 465, 475 (N.D. Iowa 1997)("[A] party must be provided a fair opportunity to present its claims."). Similarly, the discovery provision of the Arbitration Agreement meets Oregon's standard of substantive unconscionability because it unfairly favors defendant.

2. Indiscernible Limitations Period

Plaintiff also argues that the Arbitration Agreement is unenforceable because it does not set forth a discernible limitations period to bring federal statutory claims in

11 - OPINION AND ORDER

arbitration. Plaintiff maintains that the time limitations period is indiscernible because the agreement allows for the parties to mutually agree to postpone arbitration, pending federal or state employment agency investigation.

However, it is not apparent from plaintiff's arguments that this portion of the agreement is unfair or unreasonable. The language does not limit the plaintiff's statutory rights or shorten the time period in which she must bring an arbitration claim. Rather, the agreement provides that arbitration disputes must be raised in accordance with the statute of limitations periods governing claims in court. In short, I do not find that this language is substantively unconscionable or that it unfairly or unreasonably set time limits as to when an arbitration claim may be brought.

3. Costs of Document Discovery

Plaintiff also alleges that the Arbitration Agreement is substantively unconscionable, because plaintiff will be required to expand its requests for production of documents if requests for admissions and interrogatories are limited. Based on the discussion above, I find this argument moot.

C. Severability

Neither party raised the issue of whether the unconscionable discovery provisions are severable. The Arbitration Agreement contains a severability clause and specifies that any provisions found invalid shall be severed and the remaining provisions enforced: "[i]f an arbitrator or a court determines that any part

of the DRP is invalid or contrary to law, it will be severed and the remaining parts will continue in full force and effect." Percell Decl., Ex. 1 at 6.

If provisions of an arbitration agreement are found invalid, the court must determine whether to invalidate the entire agreement or the provision containing the unconscionable language. When an arbitration clause is unconscionable, state contract law governs whether the provision should be severed. Adams, 279 F.3d at 895 (applying state law in determining appropriateness of severing unconscionable arbitration provisions or refusing to enforce the contract in its entirety).

Oregon law is well settled that when a contract contains partly legal and partly illegal terms, the legal parts remain enforceable. City of Portland v. Elec. Lightwave, Inc., 452 F. Supp. 2d 1049, 1075 (2005)(citing Eldridge v. Johnston, 195 Or. 379, 405, 245 P.2d 239 (1952)). Moreover, "if there is an explicit severability clause, the court must construe that clause in a manner that best reflects the intent of the entity that enacted it." City of Portland, 452 F. Supp. 2d at 1075.

In this instance, the invalid part of the arbitration agreement is a single, isolated discovery clause and is easily severed from the Arbitration Agreement. Further, as evidenced by the language in the Arbitration Agreement, the parties expressly agreed that invalid provisions would be severed. Thus, the offending discovery provisions are not an integral part of the agreement so as to require invalidation of the entire agreement.

13 - OPINION AND ORDER

Finally, the Arbitration Agreement provides: "[i]f any procedural issue is not specifically addressed, you agree to follow the rules of the American Arbitration Association regarding arbitration of employment disputes ("the AAA rules")." Percell Decl., Ex. 1 at 3. The parties should have no difficulty substituting the AAA rules in lieu of the severed discovery provision.

### III. Conclusion

For the reasons set forth above, the court finds that the discovery provision under Section VIII(E) of the Arbitration Agreement is unconscionable and therefore invalid. The discovery provision is severed and the rest of the Arbitration Agreement is enforceable. Accordingly, defendant's Motion to Compel Arbitration and Stay or Dismiss the Proceedings (doc. 9) is GRANTED, and the proceedings stayed until the completion of arbitration.

IT IS SO ORDERED.

Dated this  29  day of October, 2007.


                        /s/ Ann Aiken
                          Ann Aiken
                  United States District Judge